GUISEPPE MARI *et ux. vs.* BASIL LANKOWICZ *et ux.*

JULY 16, 1938.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

CONDON, J.   This is a bill in equity brought for the purpose substantially of settling the boundary line between complainants' and respondents' adjacent lots of land situated on McDonough street in the city of Providence. The cause was heard in the superior court on bill, answer, replication and proof and resulted in a decision for the complainants and the entry of a decree thereon granting them the relief which they prayed for.   From this decree respondents appealed and have duly prosecuted their reasons of appeal to this court.

Respondents rely on the following reasons in their claim of appeal, namely, that the decision of the trial justice is

against the evidence and the weight thereof and that the decree entered on such decision is not based on the findings therein and is therefore erroneous.

The complainants, in reply, contend that the findings of the trial justice are reasonably supported by the evidence and that therefore his decision should not be disturbed unless it is clearly wrong. They also argue that, on the facts brought out in evidence, they were clearly entitled to a decision in their favor, as the law applicable thereto has been clearly laid down by this court in what, they assert, were identical situations in the following cases: *O'Donnell* v. *Penney,* 17 R. I. 164; *Faulkner* v. *Rocket,* 33 R. I. 152; *Aldrich* v. *Brownell,* 45 R. I. 142; *Doyle* v. *Ralph,* 49 R. I. 155; *Di Santo* v. *De Bellis,* 55 R. I. 433. The respondents do not question the law of these cases but they do dispute the complainants' claim that the facts in any of them are like those of the instant case.

The undisputed facts in this case appear to be these. On March 28, 1925, the complainants became the owners in fee of certain real estate situated on McDonough street in the city of Providence and described as lot No. 64 on the "Plat of the Eagle Steam Mill Estate in Olneyville". Their immediate predecessor in title was Antonio Papa, who had owned the lot from September 27, 1923, until he conveyed it to the complainants. The respondents bought the adjacent lot on the east from a man named F. Boule in the year 1925. This grantor had owned it a number of years before selling to the respondents, having bought it from his nephew, Simon Boule, who testified in this case for the respondents that his father owned it before him since the year 1910. Simon Boule also testified that he lived on the premises from 1910, at first with his father, later as owner and finally as agent for his uncle, F. Boule, until 1925 when his uncle sold to the respondents, Basil and Stephanie Lankowicz.

On the respondents' premises there were two houses, one in the front of the lot near McDonough street and the other

in the rear near Willow street. This latter house was built close to the east boundary line of the complainants' lot, as shown by the plat. Each of these adjoining lots was bounded on the north by McDonough street and on the south by Willow street. That part of the boundary line from Mc-Donough street southerly to or nearly to the northerly line of the rear house was marked by a picket fence that was built by Simon Boule some time before either of the parties to the present controversy had become owners of their respective lots. This fence, it is admitted, does not stand altogether on the true boundary line between the lots as shown by the recorded plat but veers in places several inches over on the complainants' side and in other places it does the same on the respondents' side. The surveyors, who testified, described it as following an irregular line. The builder of the fence, Simon Boule, testified that a surveyor had informed him this fence was not on the line. It is also admitted, however, that the present parties have accepted this fence for a period of over ten years as the dividing line between their premises as far as the fence extends. There is then no dispute about this fence.

The conflicting testimony revolves around the real matter in controversy, which is whether or not a fence existed from the northerly line of the rear house on the Lankowicz lot to Willow street and whether it was acknowledged or acquiesced in by the respondents as the occupation line of their lot. That no fence existed there at the time of the bringing of this suit was admitted by the complainant Guiseppe Mari. He also testified on cross-examination that there was no fence there when he purchased the property in 1925. His son Genaro Mari also testified to that effect.

Antonio Papa, who testified only in rebuttal for the complainants, testified that there was a fence on that portion of the boundary when he bought the property in 1923. He also testified that it was there when he sold the property to Mari in 1925, although he admitted that before that time

it was considerably broken down by persons who had taken the boards for firewood.

This witness, on cross-examination, left his testimony in some doubt as to whether any of the fence actually remained there when he conveyed to Mari, although he asserted at the end of his examination that the fence was there at that time. However, Guiseppe Mari and Genaro Mari testified positively that there was no fence there then.

As to a previously existing fence, Genaro Mari testified that there were the remains of two rotten posts on the line, about ten feet apart, which were dug up when his father built a new fence and that they were replaced by new ones in the same spots. These remains of old posts, according to his testimony, were rotted away on top but could be seen in the ground.

Guiseppe Mari also testified that the remains of the posts of an old fence were in the ground, one near the northerly end of the house in the rear of the Lankowicz lot and the other about twenty-two feet south at the Willow street line of said lot. He further testified that in the week after Columbus Day in 1926 he built a wall and a new fence on a line which he ran between these posts; that Lankowicz assisted him in laying or fixing the line before he began to build the fence, and that in 1936 this wall and fence were torn down by Basil Lankowicz, one of the respondents, but Lankowicz positively denied that he had anything to do with the laying of the line, and he also testified that he protested to Mari against building the wall and fence on that line. This testimony was introduced by the complainants apparently in proof of their contention that the line had been fixed by oral agreement between the adjacent proprietors. The trial justice, however, made no finding on this evidence as to whether there was such an oral agreement, and from the evidence we are of the opinion that none was satisfactorily proved.

Lankowicz testified that there was no fence there and that there were no old posts visible. In this testimony he was corroborated by Simon Boule, who had lived on the Lankowicz property from 1910 to 1925. Mildred A. Dean and Cecile Cayer, two tenants who lived in the house in the rear of the Lankowicz lot at the time Guiseppe Mari built his fence near that house, also testified that there was no sign of a fence having been there before. Adolph Kulmacz, who did some brick work on the foundation of the rear house, also testified that there was no sign of a fence there.

On this conflicting testimony the trial justice found that it was shown by a fair preponderance of the evidence that an occupation line existed in October 1925 between the two lots and that such line was shown by a fence, or remnants of a fence, running from McDonough to Willow street; that in October 1926 complainants built a fence and wall along that line from the northerly end of the house in the rear to Willow street; that such fence and wall were not broken down or interfered with until March 1936, and that complainants occupied their lot as shown by such occupation line uninterruptedly for a period of over ten years. The trial justice appears to have reached this conclusion without in any way, as far as his rescript shows, questioning the credibility of any of the witnesses for the respondents and without commenting adversely on the effect of such witnesses' testimony on the weight of the evidence. We, therefore, derive slight assistance from this rescript in determining how he came to find that the preponderance of the testimony favored the complainants, notwithstanding the preponderant number of witnesses who testified for the respondents positively in each instance that there was no sign of a fence on that line until Guiseppe Mari built his wall and fence in 1926.

The trial justice, in his rescript, also overlooked the fact that both Guiseppe Mari and Genaro Mari testified that there was no fence there in 1925. He says in his rescript

that an occupation line existed in October 1925 and that such line was shown by a fence or the remnants of a fence, but there is no evidence to support this statement, except the testimony of the Maris that there were the remains of two posts in the ground and this fact, if true, was apparently not discovered by the Maris until they started to build their wall and fence in October 1926. If they knew of this line of old posts and considered it the boundary line, it is strange that Guiseppe Mari should testify that he asked Lankowicz to assist him in laying the true line in 1926, when he was preparing to build the new wall and fence. In the face of the positive testimony for respondents, that there was no sign of a fence there in 1925, this evidence furnishes little support, if any, for the above finding of the trial justice, that an occupation line existed between the adjoining premises of these parties and that the respondents, with knowledge thereof, acquiesced in such line for a period of more than ten years.

We have carefully read the transcript and we are unable to find any sound basis for disregarding the testimony of the respondents' four disinterested witnesses and accepting the testimony of complainants' one disinterested witness, Papa, and the interested testimony of Genaro Mari as proof of the fact that there had been a fence there in 1925 just before the complainants became the owners of their lot, as shown by the remains of old posts visible in the ground in 1926. As we read the transcript, the complainants have fallen short of discharging the burden of proving their case by a fair preponderance of the evidence. Rather the preponderance seems to be the other way on the side of the respondents that there was no occupation line visible there in 1926, when Guiseppe Mari built the new wall and fence which respondent Basil Lankowicz later destroyed in 1936 as an encroachment on his lot. And there is nothing in the record to show that the witnesses for the respondents were unworthy of belief or that they did not have an oppor-

302

tunity to observe the true situation concerning the matter to which they testified. We are, therefore, of the opinion that the decision of the trial justice, based as it is upon this finding, is clearly wrong and against the great weight of evidence.

The cases cited by the complainants, referred to earlier in this opinion, do not help them as they have clearly failed to show, by a fair preponderance of the evidence, that the line of the fence and wall built by them had been known to and acquiesced in by the respondents as the occupation line of the premises of the complainants for a period of ten years or more, or that the respondent Lankowicz had either assisted in laying the line or had agreed orally to the laying of the line along which the new wall and fence were built.

The appeal of the respondents is, therefore, sustained, the decree appealed from is reversed, and the cause is remanded to the superior court with direction to dismiss the bill.

*Benjamin Cianciarulo,* for complainants.
*William S. Flynn,* for respondents.